Jacob Grumet, J.
Petitioners seek judgment annulling the determination of the respondent Commissioner, restraining the imposition of increased carrying charges and rental, and directing the respondent Commissioner to reconsider the application of respondent Riverbay Corporation for increase in carrying charges by conducting a preliminary hearing in advance of final determination.
Presently, approximately 6,000 units in the development are occupied. Eventually upon the completion of the project, the occupants will number approximately 15,500. The proceeding, representative in nature, is instituted by a portion of the occupants and by the association of which they are members. They complain of the findings of the respondent Commissioner with respect of schedules of costs and expenses and of his approval of the application of the respondent Riverbay Corporation for the most recent increase in rent per room effective July 1, 1970. The respondents maintain that there is no statutory mandate upon the Commissioner to conduct a hearing before he concludes that the “ estimated revenues * * * will be sufficient to cover all probable costs of operation and maintenance, of fixed charges and operating reserves and depreciation reserves if any” (Private Housing Finance Law, § 26, subd. 1, par. [b]). The respondents say that it became necessary to approve the increase in carrying charges as part of a newly worked out set of construction and operation schedules dated September 15, 1969, in order to satisfy the quoted statutory requirement and thus obtain a new loan essential to continuation of construction.
Petitioners charge unconstitutionality in that they were deprived of due process in that no plenary hearing was held.
Section 26 of the Private Housing Finance Law provides:
1 ‘ Conditions and security for loans.
“1. No loan shall be made by the state, the New York state housing finance agency, or a municipality unless the commissioner, with respect to a project aided by a state loan or New York state housing finance agency loan, or the supervising agency, with respect to a municipally-aided project, finds that: # # *
“ (b) The estimated revenues of the project will be sufficient to cover all probable costs of operation and maintenance, of fixed charges and operating reserves and depreciation reserves if any ’ ’.
Similarly, section 31 (subd. 1, par. [a]) of the statute provides that the Commissioner may vary the carrying charges or “ rental rate ” so as to secure sufficient income to meet all obligations.
*538 Section 26-a provides: ‘ ‘ Findings for municipally-aided projects. “No municipality-aided project aided solely by tax exemption shall be approved by the supervising agency unless the agency shall have made the findings set forth in subdivision one of section twenty-six.”
Section 85 provides: £ £ Control of rentals. 1. The commissioner shall fix the maximum rental per room to be charged the tenants of the dwellings furnished by a housing company, the average of such rentals for the dwellings in any project not to exceed the maximum average rental prescribed by law, except as provided in section eighty-seven. Such maximum average rental rate shall be determined upon the basis of the actual final cost of the project containing such rooms so as to secure, together with all other income of the housing company, a sufficient income to meet all necessary payments to be made by said housing company, as hereinafter prescribed, and such room rental rates shall be subject to revision by the commissioner from time to time.”
The activity here involved is not controlled by Matter of Williams v. White Plains Housing Auth. (62 Misc 2d 613) on which petitioners rely. There, an article 78 proceeding was entertained and the matter was remanded for hearing in connection with a proposed eviction. The petitioner there had executed a standard low-income housing development lease. She received a notice of eviction. Attempt to evict, the court stated, must be based on findings of fact after meaningful hearing to facilitate judicial review of a semijudicial act. What is involved here is legislative action taken prior to occupancy, as to which the statute does not require a hearing. Thus in Matter of Lake-land Water Dist. v. Onondaga County Water Auth. (24 N Y 2d 400, 407) the court stated: “An article 78 proceeding, it is ■settled, may not be utilized to review legislative action (see Matter of Southern Dutchess Country Club v. Town Bd. of Town of Fishkill, 18 N Y 2d 870; Matter of Paliotto v. Cohalan, 8 N Y 2d 1065; Matter of Neddo v. Schrade, 270 N. Y. 97, 102-103; People ex rel. Trustees v. Board of Supervisors, 131 N. Y. 468, 471; Matter of Brent v. Hoch, 13 A D 2d 505), and an order of an administrative agency fixing rates is deemed a legislative act ”. It was further held there that, where a hearing is not prescribed, remedy is by action for declaratory judgment.
At the time of application there was no occupancy. The board of respondent Riverbay Corporation was under control of the sponsor, and purchasers had not received leases or stock and would not receive them until completion of operations by the sponsor. Notice was given to all prospective tenants “ of a *539 potential rent increase” based on an “ increase in carrying charges ” which “ will be inevitable during 1970 or 1971 ”. A written receipt of such notice reading as follows was requested: “ In order to be certain that all members are fully aware and that there be no future misunderstanding, we request that you sign the attached statement indicating that you have read this memorandum and have been made aware that an increase in the carrying charges will be necessary during 1970-1971.”
While formal hearing was not held, it appears there were informal or informational meetings at which members and counsel appeared and submitted a brief and suggestions. Thereupon, findings were confirmed and notice thereof given together with notice of rent increase. Due process does not require formal hearing. As stated in Goldberg v. Kelly (397 U. S. 254, 263) : “ ‘ Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. ’ * # * It is true, of course, that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing.” (See, also, Harper v. Gaynor, N. Y. L. J., April 6, 1967, p. 18, col. 7; Matter of Rappaport v. Gaynor, 75 Misc 2d 649, affd. 26 AD 2d 620.)
In this instance it does not appear that at the informal hearings requested and granted any particular request was denied or that request to make further submission was made. In any event the Legislature did not provide for preoccupancy hearing. Even after occupancy and not until full completion and full occupancy is the project turned over to management controlled by the occupants, and only then do they have a vote.
The respondent Commissioner and his staff carefully reviewed the figures which went into the projected budget employed by the Eiverbay board of directors in determining the increase in carrying charges. In conformity with his duties, mandated by law, the Commissioner made a thorough and complete analysis of the costs and projected costs and based upon those made his findings. In doing so, he had the assistance of his various bureaus which analyzed the estimated figures. Financial computations were passed on by the Bureau of Finance and Audit ; construction estimates were submitted to the Bureau of Engineering and Construction as well as the Architectural Bureau; and costs of maintenance and operation went to the Bureau of Management.
*540 The Commissioner fulfilled his statutory responsibility of making certain that the estimated revenues would be sufficient to pay all the charges as defined in section 26 of the Private Housing Finance Law. The increase in carrying charges resulted from the application for an increase in mortgage funds. The use of estimates in projecting the annual expenses and income must be recognized as being a matter of the best judgment based upon knowledge and experience of both the builders and the Commissioner. The Legislature has placed upon the Commissioner the responsibility of making such judgment. “ Nor do the courts have the power to substitute their judgment in place of the judgment of the properly delegated administrative officials.” (Matter of Marburg v. Cole, 286 N. Y. 202, 208.)
As there is ample warrant for the Commissioner’s order, his findings are not arbitrary, capricious, unreasonable or unlawful.
The motion is denied. Settle judgment dismissing the petition.